**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 18-cr-552-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **KENNETH LAWRENCE BACA**,

    Defendant.

**ORDER DENYING MOTION TO SUPPRESS**

The Government charges Defendant Kenneth Lawrence Baca ("Baca") with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This charge arose out of an October 26, 2018 traffic stop of the vehicle that Baca was driving. Baca moves to suppress all evidence seized as a result of that October 26 stop. ("Motion"; ECF No. 25.) The Court held an evidentiary hearing on the Motion on June 27, 2019. For the reasons explained below, the Court denies the Motion.

### I. BACKGROUND

From the testimony and exhibits present at the suppression hearing, as well as the undisputed facts in the parties' briefs on the Motion, the Court finds as follows.

On October 26, 2018, Pueblo Police Department Officers Manuel Pedraza and Christopher Prado asked Detective Sincerbox, also of the Pueblo Police Department, to surveil a red Ford Explorer outside 201 West Northern Avenue, Pueblo, Colorado.

(Transcript of June 27, 2019 Hearing ("Tr.") at 9:14–15.)[1] On other occasions, police had observed gang members at that location, received information that an individual with an active warrant frequented that residence, and had previously been dispatched to that location for potential narcotics and weapons violations. (*Id.* at 9:14; ECF No. 30 at 2.)

Detective Sincerbox saw the red Ford Explorer pull away. (Tr. at 9:16.) As it did so, Detective Sincerbox read the license plate number from approximately a hundred yards away. (*Id.* at 9:16–17; ECF No. 25 at 2.) He cleared the number that he read, 044-DQK, through dispatch, which returned a red Ford Taurus whose registered owner had an active misdemeanor warrant. (Tr. at 9:16; ECF No. 25 at 2.) Detective Sincerbox attempted to catch up to the red Ford Explorer but was unable to do so. (ECF No. 25 at 2.) He informed Officers Pedraza and Prado that the red Ford Explorer's license plate did not match the vehicle and that the plate was associated with an active misdemeanor warrant. (Tr. at 9:18.)

It is undisputed that Detective Sincerbox cleared the incorrect license plate number, 044-DQK, through dispatch, transposing the "K" and "Q." (ECF No. 25 at 2; ECF No. 30 at 2.) The actual license plate number of the red Ford Explorer was 044-DKQ. (ECF No. 25 at 2; ECF No. 30 at 3.) The correct license plate number was a match for the red Ford Explorer and there were no outstanding warrants for the registered owner. (ECF No. 25 at 3; ECF No. 30 at 3–4.)

---

[1] An official transcript of the suppression hearing is not yet available. The Court will therefore cite the unofficial, rough transcript generated by the court reporter and made available for internal Court purposes.

At the suppression hearing, Officer Pedraza testified that after Detective Sincerbox contacted him, he drove along Mesa Avenue, parallel to Northern Avenue, to catch up to the red Ford Explorer and Detective Sincerbox. (Tr. at 9:20.) He and Office Prado stayed informed by radio of the location of the red Ford Explorer and Detective Sincerbox. (*Id.*) At approximately 5:16 p.m., Officers Pedraza and Prado caught up to the red Ford Explorer, and saw it pull into the Sunset Plaza parking lot. (ECF No. 25 at 2; ECF No. 30 at 2; Tr. 9:21–22.) Officer Pedraza testified that the red Ford Explorer pulled into a handicapped parking spot, and was parked for 10 to 15 seconds before he turned on his police lights and pulled behind the red Ford Explorer. (Tr. at 9:25.) His testimony was further confirmed by a recording of a jailhouse call in which Baca himself described the incident. (June 27, 2019 Hearing Gov. Ex. 2.) In that call, Baca states that he pulled into the parking lot, and *then* the officers made a u-turn, pulled in behind the red Ford Explorer, and activated their patrol lights. (*Id.* at 1:05–1:13.)[2]

As Officer Pedraza got out of the police car, he activated his body camera, which automatically saved the last 30-seconds of video-only footage, and began recording video and audio footage. (*Id.* at 9:39–40; *id.* at 10:05.) The officers approached the vehicle on both the driver and passenger sides. (*Id.* at 9:41.) The driver, Baca, asked why he had been stopped and Officer Pedraza told him that the plates did not match

---

[2] Baca suggests in his Reply in Support of the Motion that the body camera was linked to the patrol lights, which, upon review of the body camera, would suggest that Officer Pedraza activated his lights to stop the red Ford Explorer *before* it pulled into the parking space. (ECF No. 34 at 5.) However, Officer Pedraza's testimony at the hearing confirmed that his body camera is not linked to the activation of his patrol lights. (Tr. at 9:14.) The Court thus finds that Baca pulled into the parking space prior to Officer Pedraza activating his patrol lights and stopping Baca.

the vehicle. (*Id.* at 9:31; June 27, 2019 Hearing Gov. Ex. 3 ("Body Camera") at 0:41–0:50.) Officer Pedraza then asked for Baca's driver's license, proof of insurance, and registration. (Tr. at 9:31–32.) Baca provided the registration, which had the correct license plate number. (*Id.* at 9:32.) Officer Pedraza again asked for Baca's driver's license, and Baca informed him that his license had been suspended. (*Id.*) Baca did not provide proof of insurance, and explained that he would need to contact the owner of the vehicle for insurance information. (*Id.* at 9:33.)

At approximately 5:19 p.m., the officers cleared the correct license plate number, which matched the red Ford Explorer and showed that the registered owner had insurance and no outstanding warrants. (*Id.* at 9:35–36; ECF No. 25 at 3; ECF No. 30 at 3.) At approximately 5:23 p.m., dispatch confirmed that Baca did not have any outstanding warrants. (ECF No. 25 at 3; ECF No. 30 at 3–4.) The officers were still waiting for Baca to contact the owner of the vehicle and provide proof of insurance. (Tr. at 9:37.)

At approximately 5:28 p.m., Officer Pedraza noticed Baca "reach over to the front seat passenger and heard something drop inside the vehicle." (ECF No. 30 at 4; Tr. at 10:20–21.) Officer Pedraza ordered Baca out of the vehicle. (Tr. at 10:21.) Officer Prado placed Baca in handcuffs. (ECF No. 25 at 3.)

Officer Pedraza opened the driver side door and immediately found a firearm near the driver's seat. (ECF No. 25 at 3; ECF No. 30 at 4; Tr. at 10:22.)

The officers then placed Baca in the back of their patrol car. (ECF No. 25 at 4.) Eventually, Baca was transported to jail and booked on firearm charges and possession of a small amount of methamphetamine. (*Id.*)

## II. BURDEN OF PROOF

On a motion to suppress evidence derived from a warrantless search or seizure, the defendant bears the burden of presenting a *prima facie* case that the Fourth Amendment has been "implicated," at which point the burden shifts to the Government to prove "that its warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or under some other exception to the warrant requirement)." *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994); *see also id*. at nn.1–2 (citing authorities); 6 Wayne R. LaFave, *Search & Seizure* § 11.2(b), at n.35 and accompanying text (5th ed., Oct. 2017 update) ("*Search & Seizure*").

The Motion reveals that Baca's personal Fourth Amendment rights are implicated here. He has therefore raised a *prima facie* case of a potential Fourth Amendment violation through a warrantless seizure, thus shifting the burden to the Government to justify the police officers' actions.

## III. ANALYSIS

"The stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991). "An ordinary traffic stop is a limited seizure, however, and is more like an investigative detention than a custodial arrest," and thus must be supported by reasonable suspicion. *Id.* Thus, the court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the inference in the first place." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). To evaluate whether a stop was based on

reasonable suspicion, the court must consider the totality of the circumstances. *United States v. $85,688.00 in U.S. Currency*, 577 F. App'x 811, 823 (10th Cir. 2014). "Reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout." *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998).

Much of the suppression hearing focused on whether the license plate discrepancy justified the traffic stop at its inception and whether continued detention was justified after Baca provided information from which the officers should have realized the license plate error. However, the Court need not address the license plate mistake because the traffic stop was also justified by Baca's parking violation and subsequent revelation that he was driving the stopped vehicle not only on a suspended license, but potentially without insurance as well.

The Court finds that the traffic stop was justified at its inception because Baca violated the law by parking in a handicapped parking space without a valid permit to do so. "The decision to stop an automobile is reasonable, and so consistent with the Fourth Amendment, where the police have probable cause to believe that a traffic violation has occurred." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (internal quotation marks omitted and alterations incorporated); *see also United States v. McGehee*, 672 F.3d 860, 867 (10th Cir. 2012) (illegal parking justified initial traffic stop). An officer's subjective motives for stopping a vehicle are irrelevant as long as that the officer has a reasonable suspicion that "this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (internal quotation

marks omitted). As relevant here, it is a violation of Colorado law for vehicles to be parked in a parking space reserved for persons with disabilities without a valid permit to do so. Colo. Rev. Stat. § 42-4-1208(3). Defendant introduced no evidence at the suppression hearing that any occupant of the red Ford Explorer that Baca was driving, including Baca, had a valid permit to park that vehicle in a handicapped parking space.

The evidence at the suppression hearing clarified that Baca parked the red Ford Explorer in the handicapped parking spot *before* Officer Pedraza initiated the traffic stop. (Tr. at 9:25; Gov. Ex. 2 at 1:05–1:13.) Because Baca did not have a valid parking permit, he violated the applicable Colorado traffic law. Officer Pedraza's stop of the red Ford Explorer was thus supported by reasonable suspicion of a violation of a Colorado traffic law.

"In addition to being justified at its inception, a lawful traffic stop must be 'reasonably related in scope to the circumstance which justified the interference in the first place.'" *United States v. Kitchell*, 653 F.3d 1206, 1217 (10th Cir. 2011) (quoting *Terry*, 392 U.S. at 20). The scope of the detention may last only as long as necessary to effectuate the purpose of the stop and must be carefully tailored to the underlying justification. *Id.* The Tenth Circuit has held that a police officer conducting a traffic stop "may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *Id.* After that, a party must be allowed to proceed. *Id.* However, a longer detention is allowed when an officer acquires reasonable suspicion of further criminal activity. *McGehee*, 672 F.3d at 868.

Here, Officer Pedraza stopped the vehicle and asked Baca for the vehicle

7

registration, his driver's license, and proof of insurance. At first, Baca provided only the registration. Officer Pedraza asked again for a driver's license and proof of insurance, at which point Baca revealed that his license had been suspended. Driving on a suspended license is yet another violation of Colorado law. Colo. Rev. Stat. § 42-2-138. Moreover, at least initially, it was unclear to the officers whether the car was properly insured, and driving without insurance was potentially a third violation of Colorado law. *Id.* § 42-4-1409.

Once Baca admitted he did not have an active driver's license, the officers had reasonable suspicion of further criminal activity, and were permitted to investigate Baca's driving status and insurance status. *See McGehee*, 672 F.3d at 868. While the officers were waiting for Baca to provide proof of insurance, Baca's unusual movements in the car caught the officers' attention, and led to the search which revealed the firearm near the driver's seat. The Court finds that the new information acquired during the course of the traffic stop justified the continuation of that stop for an objectively reasonable period of time, which period was not here exceeded. *See United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009) ("Our precedent is clear that unless the officer obtains 'a new and independent basis' for suspecting the detained individual of criminal activity, his investigation must end.").

In summary, the Court finds and holds that the traffic stop was justified at its inception, and reasonable suspicion of further criminal activity justified the continued detention of the Defendant, during which time the evidence which Baca attempts to suppress was lawfully obtained by law enforcement. As a consequence, the Court denies Baca's Motion to Suppress.

## IV. CONCLUSION

For the foregoing reasons, Baca's Motion to Suppress (ECF No. 25) is DENIED in its entirety. By way of separate order, the Court will set new dates for a Final Trial Preparation Conference and jury trial and related filing deadlines.

Dated this 12th day of July, 2019.

BY THE COURT:

William J. Martinez
United States District Judge